UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA, <br><br> Plaintiffs, <br><br> v. <br><br> C AND C CONCRETE INC, and JOSE R. HERRERA, JR., <br><br> Defendants. | No. C 10-03344 LB <br><br> **ORDER GRANTING PLAINTIFFS' REVISED MOTION FOR DEFAULT JUDGMENT** <br><br> [Re: ECF No. 89] |

## INTRODUCTION

Plaintiffs – the trustees of employee benefits plans for laborers and other covered employees in the construction industry – sued Defendants C and C Concrete, Inc. ("C and C Concrete") and Jose R. Herrera, Jr. for failing to pay employee fringe benefits and make monthly reports in violation of the parties' collective bargaining agreement ("CBA"), the trust agreements, the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), Pub. L. No. 93-406 (codified in part at 29 U.S.C. § 1002 *et seq.*). *See* First

C 10-03344 LB
ORDER RE DEFAULT JUDGMENT

1  Amended Complaint ("FAC"), ECF No. 32.[1]  Plaintiffs dismissed Mr. Herrera from this action,
2  Voluntary Dismissal, ECF No. 69, and now they seek a default judgment against C and C Concrete,
3  Revised Motion, ECF No. 89.  Following a hearing on June 6, 2013, and upon consideration of the
4  papers submitted, the undersigned finds that (a) Plaintiffs established subject-matter and personal
5  jurisdiction, and (b) the factors in *Eitel v. McCool* favor entry of default judgment against C and C
6  Concrete.  Accordingly, the court **GRANTS** Plaintiffs' motion and enters default judgment against
7  C and C Concrete in the amount of $37,425.49.[2]

## STATEMENT

## I. FACTUAL ALLEGATIONS

Plaintiffs are the administrators and trustees for the trust funds.[3]  FAC, ECF No. 32 ¶ 3.  These trust funds are organized pursuant to the LMRA, and the trustees are fiduciaries of multiemployer benefit plans within the meaning of ERISA.  *Id*.  Each of the trust funds is a third-party beneficiary of the CBA described below.  *Id.* ¶ 4.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[2] All parties have consented to the undersigned's jurisdiction.  Consent (Plaintiffs), ECF No. 25 at 1; 9/22/2011 Joint Case Management Conference Statement, ECF No. 46 at 5 (indicating that Defendants consent to the undersigned's jurisdiction)

[3] The trust funds, established under trust agreements, consist of all employee fringe benefit contributions that are to be made by employers pursuant to collective bargaining agreements as well as all returns on contributions and any other property received or held by the trust funds.  *See* Revised Hagan Declaration, Exh. A (introductory pages of the Amended and Restated Trust Agreement Establishing the Laborers Pension Trust Fund For Northern California), ECF No. 90-1 at 1-5; *id.*, Exh. B (pages eight through ten of Article II, Section 1, of the Trust Agreement establishing the Laborers Pension Trust Fund for Northern California), ECF No. 90-1 at 6-9.

The Trust Agreements for the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation/Holiday Trust Fund for Northern California and the Laborers Training and Retraining Trust Fund for Northern California contain the same terms and conditions as the Trust Agreement for the Laborers Pension Trust Fund for Northern California.  So the same references to the Laborers Pension Trust Fund for Northern California apply to the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation/Holiday Trust Fund for Northern California and the Laborers Training and Retraining Trust Fund for Northern California. *See* Revised Hagan Declaration, ECF No. 90 ¶ 11.

1    C and C Concrete is a California corporation with its principal place of business in Lodi,
2    California and is an employer engaged in an industry or activity affecting commerce within the
3    meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(2), 1145, and Section 301 of the
4    LMRA, 29 U.S.C. § 185. *Id.* ¶ 7. Mr. Herrera is C & C Concrete's Regional Managing Officer,
5    Chief Executive Officer, and President. *Id.*

6    Plaintiffs and C and C Concrete are parties to a CBA that requires C and C Concrete to pay (1)
7    fringe benefits for their employees to employee benefit plans by the 15th day of the next calendar
8    month, and (2) report the contributions for covered employees to the plan administrator. *Id.* ¶¶ 7-11,
9    13. C and C Concrete is a fiduciary as defined by ERISA Section 3(21), 29 U.S.C. § 1002(21), and
10   therefore also is a party in interest as defined by ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A).
11   *Id.* ¶ 27. In the event that C and C Concrete fails to make the monthly installments on or before the
12   25th day of the month in which the employee fringe benefit contributions are due, C and C Concrete
13   is subject to interest at the rate of 1.5% per month as well as liquidated damages of $150 for each
14   month that the contribution is delinquent. *See* Revised Hagan Declaration, ECF No. 90 ¶ 16; *id.*,
15   Exh. H (Liquidated Damage Program — Board Policy), ECF No. 90-1 at 22-25.

16   Plaintiffs bring claims against Defendants for (1) Breach of Collective Bargaining Agreement,
17   (2) Recovery of Unpaid Trust Fund Contributions, (3) Breach of Fiduciary Duty, and (4) Mandatory
18   Injunction. *See* FAC, ECF No. 32 ¶¶ 8-33. In essence, they allege that Defendants failed to pay
19   employee fringe benefits and make monthly reports, as required, and that Defendants failed to pay
20   the resulting interest and liquidated damages, too. *See generally id.* More specifically, Plaintiffs
21   allege that Defendants breached the CBA in the following ways:

22   A.    by failing to pay all employee fringe benefit contributions reported into each Trust Fund for the
23         period September, October and December, 2009 and January, March — July and December,
24         2010 in the principal amount of $7,328.63 (*see id.* ¶ 13(a)) and by failing to pay additional
25         interest and liquidated damages for the same periods (*see id.* ¶ 13(b)) (the "Reported, Not
26         Paid Contributions, Interest, and Liquidated Damages");

27   B.    by failing to report and failing to pay employee fringe benefit contributions reported into each
28         Trust Fund for December, 2007 in the principal amount of $531.20 (*see id.* ¶ 13(c)) and by

failing to pay additional interest and liquidated damages for the same period (*see id.* ¶ 13(d)) (the "Audit-Based Not Reported, Not Paid Contributions, Interest, and Liquidated Damages");

C.  by failing to report and failing to pay employee fringe benefit contributions reported into each Trust Fund for January, 2010 in the principal amount of $492.69 (*see id.* ¶ 13(e)) and by failing to pay additional interest and liquidated damages for the same periods (*see id.* ¶ 13(f)) (the "Check Stub-Based Not Reported, Not Paid Contributions, Interest, and Liquidated Damages"); and

D.  by failing to pay liquidated damages on employee fringe benefit contributions that were paid, but paid late, for the period December, 2008 and January, April, July and August, 2009 in the amount of $860.74 (*see id.* ¶ 13(g)).

## II. PROCEDURAL HISTORY

On July 29, 2010, Plaintiffs filed a complaint against Defendants for failing to pay employee fringe benefits and make monthly reports, as required. *See* Complaint, ECF No. 1 ¶ 1. After serving Defendants with the complaints and summons, Plaintiffs, on September 3, 2010, requested that the Clerk of the Court enter default against Defendants for failing to answer its complaint. Complaint, ECF No. 1; Proof of Service, ECF No. 4 (Herrera); Proof of Service, ECF No. 5 (C & C Concrete); Request for Clerk's Entry of Default, ECF No. 6. A few days later, the Clerk of the Court entered default against Defendants. First Entry of Default, ECF No. 9.

On May 18, 2011, Plaintiffs filed a First Amended Complaint. FAC, ECF No. 32. After serving Defendants with the First Amended Complaint and Defendants failed to answer it, Plaintiffs requested the Clerk of the Court to enter default against Defendants with respect to the First Amended Complaint. Certificates of Service, ECF No. 34, 35; Motion for Entry of Default, ECF No. 38. On August 17, 2011, the Clerk of the Court entered default against Defendants. Second Entry of Default, ECF No. 41. Soon thereafter, Defendants filed an answer. Answer, ECF No. 42. In response, the parties filed, and the court granted, a stipulation to vacate the August 17, 2011 entry of default. Stipulation, ECF No. 44; Stipulation and Order, ECF No. 45.

Defendants originally were represented by attorney Scott Woodall. On May 25, 2012, the court granted Mr. Woodall's motion to withdraw. *See* Order Granting Defendants' Counsel's Motion to

Withdraw, ECF No. 65 at 1. In the order, the court noted that "corporations may not appear in federal court except through counsel," *see* N.D. Cal. Civil Local Rule 3-9(b), and ordered C & C Concrete to file a substitution of counsel by June 29, 2012. *Id.* at 3. After C and C Concrete failed to obtain a substitute counsel, Plaintiffs asked the court to strike C & C Concrete's[4] answer to the First Amended Complaint. *See* Plaintiffs' Case Management Conference Statement, ECF No. 67 at 3. A few months thereafter, the court struck C and C Concrete's answer and invited Plaintiffs to seek C and C Concrete's entry of default and to proceed with a motion for default judgment. Order Striking Answer, ECF No. 74.

Plaintiffs again sought C and C Concrete's default, Request for Entry of Default, ECF No. 84, and the Clerk of Court entered C and C Concrete's default on March 26, 2013, Third Entry of Default, ECF No. 86. Plaintiffs thereafter filed the instant motion for default judgment against C and C Concrete. Revised Motion, ECF No. 89. C and C Concrete was served with the motion by mail on April 17, 2013. Certificate of Service, ECF No. 93. C and C Concrete has failed to respond to it, *see generally* Docket, and C and C Concrete also did not appear at the June 6, 2013 motion hearing, *see* 6/6/2013 Minute Order, ECF No. 96.

## ANALYSIS

### I. JURISDICTION

Before entering default judgment, a court must determine whether it has jurisdiction over defendants. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**A. Subject-Matter Jurisdiction**

Plaintiffs allege four claims in their First Amended Complaint: (a) the first under the LMRA for breach of the CBA, *see* 29 U.S.C. § 185(a); (b) the second under ERISA to recover unpaid trust fund contributions, *see* 29 U.S.C. §§ 1132(g)(2), and 1145; (c) the third under ERISA for breach of fiduciary duty, *see* 29 U.S.C. §§ 1002(21)(A), 1104, 1109; and (d) the fourth under ERISA for a mandatory injunction for an audit, *see* 29 U.S.C. § 1132(g)(2)(E). *See* FAC, ECF No. 32 ¶¶ 8-33.

---

[4] On July 31, 2012, at Plaintiffs' request, the court dismissed Mr. Herrera from the case based on his bankruptcy discharge. *See* Notice of Discharge and Order, ECF No. 69. Therefore, the only Defendant left in this suit is C & C Concrete.

1  The court has subject-matter jurisdiction over these federal claims. *See* 28 U.S.C. § 1331(a).

**B. Personal Jurisdiction**

Plaintiffs served C and C Concrete and Mr. Herrera with the original complaint and the First Amended Complaint in California. Proofs of Service, ECF Nos. 4, 5, 34, 35. C and C Concrete is a California corporation doing business in the state of California with its headquarters in Lodi, California. FAC, ECF No. 32 ¶ 7; Richman Declaration, ECF No. 16 at 5, Exh. A (showing valid contractor's license for C and C Concrete, Inc. until January 31, 2012). The court has personal jurisdiction over C and C Concrete. *See, e.g., S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007); *Draper v. Combs*, 792 F.2d 915, 924 (9th Cir. 1986).

**II. DEFAULT JUDGMENT**

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for – and the court may grant – a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper*, 792 F.2d at 925. Default judgments are generally disfavored because "cases should be decided on the merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The court must consider the following factors when deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471-72. These factors weigh in favor of default judgment against C and C Concrete in this case.

**A. Merits and Sufficiency (prongs two and three of the *Eitel* test)**

After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The court is not required to make detailed findings of fact. *Id.* Default judgment cannot exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

In their motion, Plaintiffs appear to seek default judgment with respect to their first and second claims only. *See* Revised Motion, ECF No. 89. Plaintiffs' third claim alleges that Mr. Herrera is

individually liable for breaching his own fiduciary duty, *see* FAC, ECF No. 32 ¶¶ 27-28, but Mr. Herrera was dismissed as a defendant to this action. *See* Notice of Discharge and Order, ECF No. 69. Plaintiffs' fourth claim seeks a mandatory injunction allowing them access to C and C Concrete's books and records to determine the amount of contributions due and owing, but Plaintiffs, though their motion, appear to be seeking damages only. *See* Proposed Order, ECF No. 92. Thus, the court only addresses Plaintiffs' first and second claims against C and C Concrete.

*1. Breach of the CBA under 29 U.S.C. § 185(a)*

29 U.S.C. § 185 permits Plaintiffs to sue for breaches of a collective bargaining agreement. Federal courts apply federal common law principles to determine the enforceability of contract provisions like liquidated damages provisions. *See Idaho Plumber & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 214-18 (9th Cir. 1989). Plaintiffs' First Amended Complaint sufficiently alleges a contractual obligation to make contributions and a breach of that obligation. *See* FAC, ECF No. 32 ¶¶ 8-15.

*2. Recover of Unpaid Trust Fund Contributions under 29 U.S.C. §§ 1132(g)(2) and 1145*

29 U.S.C. § 1145 provides, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 1145 thus creates a claim against employers who do not make timely contributions as required under a collective bargaining agreement. *See Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA Inc.*, 572 F.3d 771, 774-76 (9th Cir. 2009); *Board of Trustees v. RBS Washington Blvd. LLC*, No. C 09-06660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010). Plaintiffs here must prove the following: (1) the plans are multiemployer plans as defined by 29 U.S.C. § 1002(37), (2) the CBA obligated C and C Concrete to make the disputed contributions; and (3) C and C Concrete did not make the required contributions. 29 U.S.C. § 1145; *Board of Trustees of the Sheet Metal Workers Health Care Plan of Northern California v. Gevasio Envtl. Sys.*, No. C 03-4858 WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

Plaintiffs' First Amended Complaint contains sufficient facts establishing the elements of the

claim: the trusts are multiemployer benefit plans within the meaning of ERISA; the CBA required C and C Concrete to make contributions to the plans; and C and C Concrete did not make the required contributions. *See* FAC, ECF No. 32 ¶¶ 16-24.

### B. The Remaining *Eitel* Factors

The remaining *Eitel* factors weigh in favor of granting default judgment.

*1. Possibility of prejudice to Plaintiffs*. If the motion is not granted, Plaintiffs have no recourse to enforce the terms of the agreement requiring C and C Concrete to make plan contributions and pay liquidated damages.

*2. Possibility of dispute concerning a material fact*. C and C Concrete's answer was stricken and it has defaulted, and thus there is no information that there might be a disputed issue of material fact. The issues are straightforward: whether C and C Concrete failed to make timely contributions as required by the bargaining agreement, and what the liquidated and interest damages are.

*3. Excusable Neglect*. There is no indication that C and C Conrete's failure to participate in this proceeding is due to excusable neglect. In fact, the record establishes ongoing contact by Plaintiffs with C and C Concrete through this action.

*4. The sum of money at stake in the action*. When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three million dollar judgment, considered in light of parties dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees*, 2010 WL 145097 at *3 (*citing Eitel*, 782 F.2d at 1472). The amounts sought here generally are modest and reasonable, and they are required by both the CBA and 29 U.S.C. §1132. *See Northwest Administrators, Inc. v. Albertsons, Inc.*, 104 F.3d 253, 257-58 (9th Cir. 1996). This factor does not disfavor entry of default judgment in this case.

*5. Strong policy in Federal Rules favoring decisions on the merits*. Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see RBS Washington*, 2010 WL 1450897 at *4.

### III. RELIEF SOUGHT

Under the trust agreement, CBA, and the ERISA statute, when contributions are unpaid, Plaintiffs may recover the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs; and (5) such other legal or equitable relief the court deems appropriate. 29 U.S.C. § 1132(g)(2).

For the breach of contract claim for damages, the district court applies federal contract law to determine whether the liquidated damages are reasonable. *See Idaho Plumbers*, 875 F.2d at 214-18. Liquidated damages must meet two provisions: (1) the harm caused by the breach of contract must be difficult or impossible to estimate; and (2) the amount of liquidated damages must be a reasonable forecast of compensation for the harm caused. *Id.*; *United Order of American Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.,* 519 F. 2d 332 (9th Cir. 1975) (upholding liquidated damages provision in collective bargaining agreement of 10 percent of unpaid contributions).

For the ERISA claim for damages under 29 U.S.C. § 1132(g)(2), Plaintiffs must prove their entitlement to relief through written declarations and fulfill the following three requirements: (1) the defendant must be delinquent in its contributions at the time the action is filed; (2) the district court must enter judgment against the defendant; and (3) the plan must provide for the damages sought. *Northwest Administrators*, 104 F.3d at 257-58; *Idaho Plumbers & Pipefitters v. United Mechanical*, 875 F.2d 212, 215 (9th Cir. 1989). If these requirements are met, an award of contributions, liquidated damages, and reasonable attorney's fees and costs is mandatory. *Northwest Administrators*, 104 F.3d at 257-58; *Board of Trustees*, 2010 WL 145097 at *3. The specific award under 29 U.S.C. § 1132(g)(2) is as follows: (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions); (D) reasonable attorney's fees and costs; and (E) appropriate equitable relief. *See* 29 U.S.C. § 1132(g)(2).

The court now turns to Plaintiffs' requested relief.

**A. Reported, Not Paid Contributions, Interest, and Liquidated Damages**

As Plaintiffs describe in their motion, and as the documents submitted demonstrate, C and C

Concrete submitted its Employer Reports of Contributions for the period September, October and December, 2009 and January, March - July, and December, 2010, as required, reporting hours of covered work under the collective bargaining agreement. *See* Revised Hagan Declaration, ECF No. 90 ¶¶ 17-18, Exh. J (copies of the Employer Reports of Contribution for September, October and December, 2009 and January, March - July, and December, 2010). C and C Concrete, however, failed to pay all of the contributions on behalf of its covered employees for this period. *See id.* ¶ 17, Exhs. I (Statement of Contributions Due Laborers Trust Funds [Reported, Not Paid]), J (copies of the Employer Reports of Contribution for September, October and December, 2009 and January, March - July, and December, 2010). The unpaid principal contributions total $7,328.63. *Id.* ¶¶ 17-18, Exh. I. C and C Concrete owes this amount.

Further, pursuant to Liquidated Damage Program — Board Policy, C and C Concrete is subject to interest at the rate of 1.5% per month, as well as liquidated damages, set at $150 for each month that the contribution is delinquent. Calculated at 1.5% per month from the month in which each delinquent contribution for each Trust Fund was recorded and accumulated, the interest C and C Concrete owes through April 25, 2011 totals $1,230.11. *See id.* ¶ 19, Exh. K (Statement of Interest and Liquidated Damages Due Laborers Trust Funds [Reported/Not Paid]).[5]

In addition, pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional award in an amount equal to the greater of the interest on the unpaid contributions (in this case, $1,230.11) or liquidated damages at the contract rate (in this case, $1,500.00). As the liquidated damages is greater than the interest, Plaintiffs are entitled to another $1,500.00 in liquidated damages. *See id.* ¶

---

[5] The court finds specifically that both conditions under *Idaho Plumbers* exist for enforcing the liquidated damage provision: (1) the harm caused by the breach of contract is difficult or impossible to estimate, and (2) the amount of liquidated damages is a reasonable forecast of compensation for the harm caused. *See Idaho Plumbers*, 875 F.2d at 214-18. As to the first factor, costs are spread across different trust for different benefits like health, pension, vacation and other benefits. Damage to labor-management harmony also results when an employer fails to comply with long-negotiated provisions in collective bargaining agreements. *See United Order of American Bricklayers*, 519 F.2d at 332 (finding these facts persuasive). As to the second factor, the court recognizes that Defendants ultimately made payments. Still, different trusts are affected, and the $150 flat fee is relatively small compared to the size of the contributions involved. Thus, the court concludes that the liquidated damages provision of the trust agreement is reasonable.

1  20, Exh. K.

2  In sum, for contributions reported, but not paid, Plaintiffs are entitled to an award under 29
3  U.S.C. §§ 1132(g)(2)(A), (B) and (C) as follows:

|  |  |
|---|---|
| Unpaid Contributions: | $7,328.63 |
| Board Policy Interest: | $1,230.11 |
| § 1132(g)(2)(C) Liquidated Damages: | $1,500.00 |
| Sub Total: | $10,058.74 |

8  *See id.* ¶ 21.

9  **B. Audit-Based Not Reported, Not Paid Contributions, Interest, and Liquidated Damages**

10  As described above, an audit was conducted of C and C Concrete. The audit showed that C and
11  C Concrete failed to report and pay all employee fringe benefit contributions on behalf of its
12  covered employees for the period of December, 2007 in the amount of $531.20. *See* Revised Hagan
13  Declaration, ECF No. 90 ¶ 22. The audit summary sheets identify the employees, by name and
14  social security number (which are redacted), whose hours were not reported, and the hours of
15  covered work due for the period December, 2007, and show that C and C Concrete failed to report
16  and pay contributions totaling $531.20. *See id.* ¶¶ 23-24, Exhs. L (Statement of Contributions Due
17  Laborers Trust Funds [Not Reported/Not Paid]), M (audit summary report).

18  C and C Concrete also owes interest on this amount. Pursuant to Liquidated Damage Program
19  — Board Policy, C and C Concrete is subject to interest at the rate of 1.5% per month, as well as
20  liquidated damages, set at $150 for each month that the contribution is delinquent. Calculated at
21  1.5% per month from the month in which each delinquent contribution for each Trust Fund was
22  recorded and accumulated, the interest C and C Concrete owes through March 26, 2011 is $302.78.
23  *See id.* ¶ 25, Exh. N (Statement of Interest and Liquidated Damages Due Laborers Trust Funds [Not
24  Reported / Not Paid]).

25  In addition, pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional award
26  in an amount equal to the greater of the interest on the unpaid contributions (in this case, $302/78) or
27  liquidated damages at the contract rate (in this case, $150.00). As the interest is greater than the
28  liquidated damages, Plaintiffs are entitled to another $4,425.63 in interest. *See id.* ¶ 26, Exh. N.

Based on the above, Plaintiffs are entitled to an award under 29 U.S.C. §§ 1132(g)(2)(A), (B) and (C) in the following amount:

| | |
|---|---|
| Unpaid Contributions: | $531.20 |
| Board Policy Interest: | $302.78 |
| § 1132(g)(2)(C) Interest: | $302.78 |
| Sub Total: | $1,136.76 |

*See id.* ¶ 27.

### C. Check Stub-Based Not Reported, Not Paid Contributions, Interest, and Liquidated Damages

An employee of C and C Concrete, Nicholas J. Arrollo, submitted his check stubs to Plaintiffs and requested that Plaintiffs Trust Funds verify that C and C Concrete paid all employee fringe benefit contributions due and owing. See Revised Hagan Declaration at ¶¶ 28-29. Plaintiffs thus discovered that C and C Concrete failed to report and thus failed to pay contributions due and owing for the employee for the period January, 2010 in the amount of $492.69. *See id.* ¶ 29, Exhs. O (Statement of Contributions Due Laborers Trust Funds [Not Reported / Not Paid]), P (copies of check stubs). C and C Concrete owes this amount.

C and C Concrete also owes interest on this amount. Pursuant to Liquidated Damage Program — Board Policy, C and C Concrete is subject to interest at the rate of 1.5% per month, as well as liquidated damages, set at $150 for each month that the contribution is delinquent. Calculated at 1.5% per month from the month in which each delinquent contribution for each Trust Fund was recorded and accumulated, the interest C and C Concrete owes through April 25, 2011 is $110.86. *See id.* ¶ 30, Exh. Q (Statement of Interest and Liquidated Damages Due Laborers Trust Funds [Not Reported / Not Paid]).

In addition, pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional award in an amount equal to the greater of the interest on the unpaid contributions (in this case, $110.86) or liquidated damages at the contract rate. There are no liquidated damages assessed. *See id.* ¶ 31. As the interest is greater than the liquidated damages, Plaintiffs are entitled to another $110.86 in interest. *See id.* ¶ 31, Exh. Q.

Based on the above, Plaintiffs are entitled to an award under 29 U.S.C. §§ 1132(g)(2)(A), (B) and (C) in the following amount:

| | |
|---|---|
| Unpaid Contributions: | $492.69 |
| Board Policy Interest: | $110.86 |
| § 1132(g)(2)(C) Interest: | $110.86 |
| Sub Total: | $714.41 |

*See id.* ¶ 32.

### D. Late Contributions

ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), provides that a court may award "such other legal and equitable relief as the court deems appropriate." This relief may include interest and liquidated damages on employee fringe benefit contributions that were paid, but paid late. *See Northeast Administrators*, 104 F.3d at 257-58 (9th Cir. 1996); *Idaho Plumbers*, 875 F.2d at 216-18.

As evidence submitted by Plaintiffs demonstrates, during the period December, 2008 and January, April, July and August, 2009, although C and C Concrete paid the employee fringe benefit contributions as reported, it failed to pay the employee fringe benefit contributions on time, i.e., prior to the 25th day of the month immediately succeeding the month in which the employee's work was performed. *See* Revised Hagan Declaration, ECF No. 90 ¶ 33, Exh. R (Statement of Interest and Liquidated Damages Due [Paid/Paid Late]). Interest and liquidated damages on contributions that were paid, but were paid late, for the period December, 2008 and January, April, July and August, 2009 amount to $860.74 as calculated through April 25, 2011. *See id.* ¶ 33, Exh. R. Accordingly, C and C Concrete owes this amount.

### E. Attorney's Fees and Costs

Plaintiffs also request attorney's fees and costs as follows: fees of $23,340.50 (68.7 hours at $345 per hour) and costs of $1,314.34. Revised Motion, ECF No. 89 at 13-14; Revised Richman Declaration, ECF No. 91, Exh. A (itemized fees and costs). An award for reasonable fees and costs is mandatory because there are unpaid contributions and the plan provides for reasonable fees and costs. *See Northwest Administrators*, 104 F.3d at 257-58. Fees are also allowed and appropriate under the terms of the parties' trust agreements.

The $1,314.34 costs are fees related to the filing of the complaint and the service and mailing of numerous documents. *See* Revised Richman Declaration, Exh. A, ECF No. 91 at 14-17. These are reasonable, and the court awards them.

To determine a reasonable attorney's fee award in cases such as this, courts use the lodestar method. *Grove v. Wells Fargo Financial Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). The court calculates a lodestar amount by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Id.* The court finds the hourly rate reasonable and recommends awarding fees for 68.7 hours for a total of $23,340.50.

### *1. Reasonable Hourly Rate*

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is the "forum in which the district court sits," which here is the Northern District of California. *Camacho*, 523 F.3d at 979. The party requesting fees must produce satisfactory evidence – in addition to the attorney's own affidavits or declarations – showing the rates are in line with community rates. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

Based on Mr. Richman's experience, hourly rates and fee awards for counsel in similar cases, and the Laffey Matrix (which here results in a locality-adjusted award of $418 an hour), the court finds the hourly rate reasonable. *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1067 (N.D. Cal. 2010); *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912, 921-22 (N.D. Cal. 2005). Mr. Richman is a senior counsel, managing partner, and shareholder of Bullivant Houser Bailey PC. Revised Richman Declaration, ECF No. 91 ¶ 3. He has been practicing law since 1984, and has been handling ERISA trust litigation since 1995. *Id.* Mr. Richman previously represented Plaintiffs during the period between 1995 to 2002, and more recently since 2006. *Id.* Mr. Richman bills at $345 per hour, a lower rate than his standard rate for general litigation of $375-$450. *Id.* at ¶ 4, Exh. A (showing that Plaintiffs were billed at $345 per hour). Courts in this district have approved rates similar to that of Mr. Richman. *See, e.g.,*

*Crosthwaite v. Brennan*, No. C 10-03940 CW (LB), 2011 WL 589821, at *8 (N.D. Cal. Jan. 25, 2011) (approving an hourly rate of $295).  The court finds Mr. Richman's hourly rate of $345 reasonable.

### *2. Reasonable Hours Expended*

Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'"  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The party requesting fees must provide detailed time records documenting the task completed and the time spent.  *See Hensley*, 461 U.S. at 434; *McCown*, 565 F.3d at 1102; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

Here, the total number of hours of 68.7 includes drafting the complaints filed, the documents related to Defendants' multiple defaults, case management statements, and the instant motion for default judgment.  Revised Richman Declaration, ECF No. 91, Exh. A.  Mr. Richman was responsible for all billing except 3.7 hours).  *Id.*  The court finds these billings to be reasonable and in line with the timeline of this action and were necessary for its prosecution.

## CONCLUSION

Based on the foregoing, the court **GRANTS** Plaintiffs' motion for default judgment and awards Plaintiffs $37,425.49, which is broken down as follows:

- For the Reported, Not Paid Contributions, Interest, and Liquidated Damages, the court award Plaintiffs $10,058.74.
- For the Audit-Based Not Reported, Not Paid Contributions, Interest, and Liquidated Damages, the court awards Plaintiffs $1,136.76.
- For the Check Stub-Based Not Reported, Not Paid Contributions, Interest, and Liquidated Damages, the court awards Plaintiffs $714.41.
- For the Late Contributions, the court awards Plaintiffs $860.74.
- For attorney's fees and costs, the court awards Plaintiffs $23,340.50 in fees and $1,314.34 in costs.

This disposes of ECF No. 89.

**IT IS SO ORDERED.**

Dated: June 6, 2013

_____
LAUREL BEELER
United States Magistrate Judge